Judith JOHNSON, Plaintiff,

v.

ASSOCIATES FINANCE, INC.,
Defendant.

No. RI-CIV-73-22.

United States District Court,
S. D. Illinois, N. D.

Feb. 6, 1974.

&#8599;6.8

Tom M. Lytton, East Moline, Ill., for plaintiff.

John Donald O'Shea, Moline, Ill., for defendant.

## DECISION AND ORDER

ROBERT D. MORGAN, Chief Judge.

By this action plaintiff seeks relief for alleged violations by the defendant of the Federal Truth in Lending Act, 15 U.S.C. §§ 1601–1665, Title I of the Consumer Protection Act, and the regulations promulgated thereunder, FRB Regulation Z, 12 CFR § 226.1 et seq. Jurisdiction is provided by 15 U.S.C. § 1640(e)..

Specifically, the issues presented herein call for interpretation of § 1639 of Title 15, and certain Federal Reserve Board regulations governing consumer

loans not under open end credit plans. The instant case involves one such loan made by the defendant to the plaintiff, who now contends that the disclosure requirements of the law were not met in three regards. The matter is now before the court on plaintiff's motion for summary judgment, which, for the reasons set forth below, must be granted. The court is appreciative of scholarly briefs which have been furnished by both sides.

The introductory provision of the Federal Truth in Lending Act clearly and concisely states that it is the purpose of the statute:

"* * * to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uniformed use of credit." 15 U.S.C. § 1601.

Congress recognized that, to the borrower, the consumer credit field was a frequently incomprehensible jungle, and by the passage of this Act it hoped to alleviate that situation. The remedial objectives of this statute can, however, only be achieved through a rigorous application of the requirements of the law. Any interpretation of the Act and the regulations implementing it should be made with the full realization that "meaningful disclosure" is the byword of the statute.

■ The first of the plaintiff's three contentions is that the Loan Disclosure Statement prepared in connection with the subject loan is inadequate because it fails to disclose a "description of each amount included" in the finance charge, as required by Section 226.8(d)(3) of Regulation Z.[1] The "finance charge" is stated as such in a box at the top of the

defendant's Disclosure Statement and, although it is nowhere stated, the parties now agree that it actually includes interest only here, and no other additional fee or charge. Associates insists that because the finance charge consists of only one element—namely, interest— there has been full disclosure in compliance with the law. Plaintiff, on the other hand, contends that Regulation Z requires a breakdown of the finance charge, i. e., a clear statement of what it includes in all cases, even when it includes only one element, as here.

Though the defendant's argument may seem reasonable on its face, it actually represents an attack on the basic scheme of disclosure fundamental to Regulation Z. The term "finance charge" is highly ambiguous and a borrower can hardly be expected to know whether it denotes one type of charge or embraces a whole host of fees. The lender does know. Section 226.8(d)(3) amounts to a recognition of this difficulty and prescribes a sensible and uniform way to resolve the disparity of information—i. e., it requires the lender in all cases to disclose individually the existence and amount of each component part or parts of the finance charge. The defendant herein failed to comply with that requirement and is therefore liable under the Act.

■ Secondly, plaintiff alleges that a provision in the security agreement attempts to create a security interest in all consumer goods thereafter acquired by the debtor, in contravention of state law which only permits a security interest to attach on consumer goods acquired within 10 days after the date of the security agreement. Ill.Rev.Stat., ch. 26, § 9–204(4)(b). It is urged that this provision violates Sections 226.-6(c)[2] and 226.8(b)(5)[3] of Regulation Z.

---

[1]. 12 CFR § 226.8(d) provides, in relevant part:

"(d) * * * In the case of a loan or extension of credit * * * the following items, as applicable, shall be disclosed:

"(d) * * * (3) * * * the total amount of the finance charge, with description of each amount included, using the term 'finance charge.'"

[2]. 12 CFR § 226.6(c) provides as follows:

"(c) *Additional Information.* At the creditor's option, additional information or · explanations may be supplied with any disclo-

[3]. See note 3 on page 1123.

■ With little hesitancy, the court is inclined to agree with the plaintiff. The challenged provision fails to clearly and accurately define the extent of the defendant's security interest and seems almost patently designed to mislead and confuse the borrower in that regard. As such, it violates the spirit of the law as well as the letter of Sections 226.6(c) and 226.8(b)(5) of Regulation Z.

Lastly, plaintiff alleges that the defendant violated Section 226.8(b)(7)[4] of Regulation Z, for the reason that the Loan Disclosure Statement merely identifies, without explanation, the "Rule of 78's"[5] as the method by which a refund of precomputed interest will be determined in the event of prepayment of the loan.

While the "Rule of 78's" is undoubtedly a commonly used term having a definite meaning among persons engaged in the consumer loan business, as defendant asserts, the layman cannot be expected to understand it by name. The kind of meaningful disclosure sought by Congress requires that the lender communicate in an intelligible manner— with words or with numbers, or with both—the way in which a rebate of precomputed interest is to be determined. To require less of the lender would frustrate congressional policy and defy any reasonable interpretation of 12 CFR § 226.8(b)(7).

■ In respect to the plaintiff's first and third points, defendant points out that its Loan Disclosure Statement is patterned after a model form appended to a pamphlet published by the Board of Governors of the Federal Reserve System, entitled "What You Ought to Know About Truth in Lending." Reliance on this form as a defense is misplaced, however.

In the first place, such forms and other "outside pamphlet material" are not law, even though they are prepared by a governmental body authorized to promulgate regulations having the force of law. The pamphlet recognizes this and refers in bold face type to the text of Regulation Z for exact information on what is required. *See* Bone v. Hibernia Bank, 354 F.Supp. 310 (N.D.Cal.1973). Moreover, the particular form relied upon by defendant here appears in said pamphlet for the express purpose of illustrating how a creditor could comply with 12 CFR § 226.7(b) and (c), which is not the ground of plaintiff's attack in this suit.

Once a defendant's liability under the Truth in Lending Act is established, Section 1640(a) of Title 15, United States Code, mandates the recovery to which the plaintiff is entitled. No discretion in this matter is left to the court. Thus, by statute, the plaintiff is entitled to a recovery of $1,000 in this case, plus costs and reasonable attorney's fees.

■ 15 U.S.C. § 1640(c) is not applicable here. It relieves creditors from liability where their violation of the Act was "not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably

---

sure required by this part, but none shall be stated, utilized, or placed so as to mislead or confuse the customer . . .."

3. 12 CFR § 226.8(b)(5) reads, in relevant part:
"(5) * * * If after-acquired property will be subject to the security interest, or if other or future indebtedness is or may be secured by any such property, this fact shall be clearly set forth in conjunction with the description or identification of the type of security interests held, retained or acquired."

4. The Act does not expressly require any statement regarding refunds in the event of prepayment. However, 12 CFR § 226.-8(b)(7) does require the lender to identify:
"(7) * * * the method of computing any unearned portion of the finance charge in the event of prepayment of the obligation * * * that will be credited to the obligation or refunded to the customer."

5. The "Rule of 78's" is stated to be a well known plan in general use by lenders to allocate the amount of the total interest due on a loan to each of the 12 months in a year. Its name is derived from the fact that, when added, the numbers 1 through 12—each of which represents one month of the year—total 78. The allocation of interest is figured on the following basis: 12/78's of the total interest due in the year is said to be due in the first month a loan is out; 11/78's is allocated to the second month; 10/78's to the third month, and so on down the line.

adapted to avoid any such error." While defendant here may have acted in good faith, its acts were, nevertheless, intentionally done and not by mistake. There was no procedure adapted in any way to avoid what took place here. It was all clearly intended. Hence, we are clearly outside the ambit of § 1640(c). *See* Ratner v. Chemical Bank New York Trust Co., 329 F.Supp. 270, 281–282 (S. D.N.Y.1971).

Accordingly, it is ordered that the plaintiff's motion for summary judgment is allowed and that judgment enter herein in favor of the plaintiff and against the defendant for the sum of $1,000, plus costs of suit. The matter of allowance for attorney's fees will abide further proceedings, including any appeal herein.