**Howard ROLLINS, Jr., on his own behalf and on behalf of all other persons similarly situated**

v.

**SEARS, ROEBUCK AND COMPANY.**

**Civ. A. No. 75–3122.**

United States District Court,
E. D. Louisiana.

June 21, 1976.

Joseph W. Thomas, New Orleans, La., for plaintiff.

Peter Frank Liberto, Chaffe, McCall, Phillips, Toler & Sarpy, New Orleans, La., for defendant.

HEEBE, Chief Judge:

This case is brought under the Truth-in-Lending Act, 15 U.S.C. § 1601, *et seq.*, and Federal Reserve Regulation Z, 12 C.F.R. § 226.1 et seq. There are two motions before the Court: plaintiff's motion to dismiss defendant's counterclaim against him, and plaintiff's motion for class action certification.

*F.R.C.P. 13—Counterclaims*

█ Defendant alleges that plaintiff is delinquent on his Sears account in the sum of $716.10. Plaintiff moves to dismiss defendant's counterclaim against him. If defendant's counterclaim is compulsory, this Court has ancillary jurisdiction over it. *Moore v. New York Cotton Exchange*, 270 U.S. 593, 46 S.Ct. 367, 70 L.Ed. 750 (1926). If it is permissive, there is no federal subject matter jurisdiction because the parties are not diverse, there is no federal question, and more than $10,000 is not in controversy. 28 U.S.C. §§ 1331, 1332.

The question before us is whether the counterclaim "arises out of the transaction or occurrence that is the subject matter of the opposing party's [plaintiff's] claim." Rule 13(a). A number of tests have been suggested to determine whether a counterclaim is compulsory. The test adopted by the majority of courts and approved by the commentators is whether there is a logical relationship between the original claim and the counterclaim. Wright and Miller, Federal Practice and Procedure § 1410; 3 Moore's Federal Practice ¶ 13.13, n. 7. We do not believe it can be denied that plaintiff's claim and defendant's counterclaim are logically related since they both concern plaintiff's single purchase of a washer and dryer from the defendant. *See Spartan Grain and Mill Co. v. Ayers*, 517 F.2d 214, 220 (5th Cir. 1975).

Many courts have assumed that a state law counterclaim in a Truth-in-Lending suit is compulsory, *e. g., Rodriguez v. Family Publications Service, Inc.*, 57 F.R.D. 189, 193 (C.D.Cal.1972) and *Berkman v. Sinclair Oil Corp.*, 59 F.R.D. 602, 609 (N.D.Ill.1973). This Court is aware of only three cases that have discussed the issue and held to the contrary. The first of these is *Roberts v. National School of Radio and Television Broadcasting*, 374 F.Supp. 1266, 1270–71 (N.D.Ga.1974). That case has recently been overruled. *Mims v. Dixie Finance Corp.*, C75–627A (N.D.Ga. May 6, 1976) (*en banc*). The second case is *Ball v. Connecticut Bank and Trust Company*, 404 F.Supp. 1, 3–4 (D.Conn.1975), and the third is *Agostine v. Sidcon Corp.*, 69 F.R.D. 437, 441–43 (E.D.Pa. 1975). These decisions, though they say a defendant's counterclaim is not logically related to a plaintiff's Truth-in-Lending claim, are primarily animated by a fear that plaintiff's federal rights will be prejudiced by counterclaims and that federal courts will be burdened with large numbers of small claims involving important issues of state law. 404 F.Supp. at 4; 374 F.Supp. at 1271; and 69 F.R.D. at 441–43. While these are legitimate concerns, we do not believe they are compelling. The fear that plaintiff's rights will be prejudiced at trial can be avoided by judicious application of Rules 13(i) and 42(b) providing for separate trials. If it is feared that plaintiffs will be deterred from exercising their federal rights because defendants may file state law counterclaims against them, it must be realized that this possibility exists in a number of areas including securities and antitrust, yet there is no general rule that pro-

hibits counterclaims in such circumstances, e. g., *Cotchett v. Avis Rent-a-Car Systems, Inc.*, 56 F.R.D. 549, 552 (S.D.N.Y.1972); *Mims, supra*, (Special Master's Recommendations, n. 4).

■ The fact that most counterclaims in Truth-in-Lending suits will be based on state law is not enough by itself to require that they be deemed permissive. Federal causes of action often create the possibility of state law counterclaims. Here again, there is no general rule holding that counterclaims must be dismissed because they are based on state law. Indeed, such a rule would substantially emasculate the compulsory counterclaim rule and destroy the judicial economy that compulsory counterclaims seek to achieve. Given diversity jurisdiction, it is also clear that Congress does not feel that federal courts are incompetent to decide state law issues.

■ If the concern about state law counterclaims is to have any validity, it is because of the *quantity* of such counterclaims. Plaintiffs in Truth-in-Lending suits may be divided into four groups: (1) individual suits in which there are no counterclaims; (2) class action suits in which there are no counterclaims; (3) individual suits in which there are counterclaims; and (4) class action suits in which there are counterclaims. Obviously, the first two categories will not involve federal courts in the decision of state law issues because no counterclaims exist. In the third category, federal courts will have to decide state law issues but the numbers of such cases should not be overwhelming, especially since many plaintiffs may not wish to subject themselves to the possibility that the net judgment will be in favor of the defendant. In the fourth category, there would be numerous state law counterclaims. However, we believe that those members of a class who have state law counterclaims against them must be excluded from the class so that common questions of law and fact will predominate and so that the class action device is the superior method of adjudication under Rule 23(b)(3), *infra*. Thus, we see little danger that the federal courts will be inundated

with numerous state law questions involving small sums. Without a more explicit statement, we cannot believe that Congress was unaware that the Truth-in-Lending law would involve federal courts in the decision of some state law questions via. counterclaims as does every federal cause of action. Without such a statement by Congress, we cannot create an exception to the compulsory counterclaim rule in Truth-in-Lending suits. We hold that defendant's state law counterclaim is compulsory.

### Interface of Rule 13 and Rule 23

■ Whether class members, other than the named class representatives, are "parties" for the purposes of the Federal Rules of Civil Procedure has received a varying response from the courts. *In Re Four Seasons Securities Laws Litigation*, 525 F.2d 500, 504 (10th Cir. 1975). One case is often cited for the proposition that such class members are not parties for the purposes of Rule 13. *Donson Stores, Inc. v. American Bakeries Co.*, 58 F.R.D. 485, 488–90 (S.D.N.Y.1973). However, *Donson Stores* is limited to the situation where such class members are unspecified. *Turoff v. Union Oil Co. of California*, 61 F.R.D. 51, 59 (N.D.Ohio 1973). *Donson Stores* itself indicates that such class members are still entitled to notice that counterclaims may be filed against them, and the court also says that it will consider counterclaims against such class members if the defendant is found liable and they file claims against the defendant. 58 F.R.D. at 489–90. *Donson Stores* does not stand for any absolute rule that class members, other than the named class representatives, are never parties for the purposes of Rule 13. They are not parties only so long as they are unspecified. In the case before us, all class members have been identified by name so *Donson Stores* would not bar the defendant from filing counterclaims against them. This result prevents emasculation of the class action device by defendants filing a blizzard of counterclaims since class members who have counterclaims filed against them may be excluded if necessary, *infra*. It also protects defendants from the

loss of their suits via Rule 13(a) against delinquent plaintiffs.

*Rule 23—Class Action Status*

■ Plaintiff does not argue that this case may be certified under Rule 23(b)(1) or (2). Therefore, we only consider its propriety under Rule 23(b)(3). Defendant has indicated that it intends to file counterclaims against all 36 class members who have delinquent accounts with it. As to such class members, common questions of law and fact would no longer predominate since a variety of state law issues would be presented as well as a different fact pattern as to each allegedly delinquent class member. As to such class members, we also feel that a class action would no longer be a superior device because the state claims involved would absorb large amounts of the Court's time without any corresponding gain as a result of class action status that could not be achieved through the application of *stare decisis* and *collateral estoppel.* Therefore, such class members must be excluded from the class.

■ Until the 1974 amendments to 15 U.S.C. § 1640(a), many courts dismissed Truth-in-Lending class action suits on the grounds that there was no lack of incentive for individual suits since reasonable attorney's fees, costs and a minimum of $100 could be recovered and because of the possibly horrendous consequences of $100 minimum recoveries for each class member. The possibility of horrendous consequences has been eliminated by § 1640(a)(2)(B) abolishing minimum recoveries in class actions. *Boggs v. Alto Trailer Sales, Inc.,* 511 F.2d 114, 118 (5th Cir. 1975). Though *Boggs* does not explicitly say so, it seems to reject the argument that class actions are unnecessary because of the attorney's fees provision and $100 minimum recoveries since the lower court had cited that as a reason for its decision and the Fifth Circuit did not affirm on that ground. In any event, we think this is the proper view because many plaintiffs will not know of or have a suffi-

cient incentive to protect their rights. *Haynes v. Logan Furniture Mart, Inc.,* 503 F.2d 1161, 1164–65 (7th Cir. 1974); *Goldman v. First National Bank of Chicago,* 4 CCH Consumer Credit Guide ¶ 98,464 (7th Cir. March 12, 1976); and *Agostine, supra,* 69 F.R.D. at 447–48. Moreover, if we were to adopt the argument that class actions are unnecessary because of the attorney's fees and $100 minimum recovery provisions, we would be erecting a *per se* rule that class actions are never appropriate in Truth-in-Lending suits. We cannot do this because it is contrary to Congress' intent as expressed in its 1974 amendments to § 1640, facilitating the bringing of Truth-in-Lending class actions.[1]

Defendant also argues that this class action is unmanageable and that common questions of law and fact do not predominate because the Truth-in-Lending Act only covers credit transactions for personal but not for business purposes. 15 U.S.C. § 1603(1). *Rodriguez, supra,* 57 F.R.D. at 193; and *Berkman, supra,* 59 F.R.D. at 609. We are not convinced that these cases are properly decided. In any event, they are distinguishable. *Rodriguez* involved magazine subscriptions while *Berkman* involved credit cards. Both of these items are often used for business and personal purposes. The case before us involves purchases of household goods, *e. g.,* the plaintiff bought a washer and dryer. Most, if not all, of such items are obviously for personal use. The few disputes that may arise concerning this will not adversely affect the superiority of the class action device. *Katz v. Carte Blanche Corp.,* 53 F.R.D. 539, 542–43 (W.D. Pa.1971), *rev'd on other grounds, Katz v. Carte Blanche,* 496 F.2d 747 (3rd Cir. 1974) (en banc), *cert. denied,* 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125. *See Haynes, supra,* 503 F.2d at 1165, n. 4.

■ There are 338 persons in the class plaintiff seeks to represent, which is all persons who entered into consumer credit transactions with defendant at its store lo-

---

**1.** It is also important to note that class actions are often certified under the federal antitrust statutes even though they provide for treble damages and attorney's fees. 15 U.S.C. § 15.

cated at 4601 Chef Menteur Highway, New Orleans, Louisiana, from October 8, 1974, to October 31, 1974.[2] We have excluded from the class all those against whom defendant filed counterclaims, *supra.* This would leave a class of 302 persons which meets the numerosity requirement of Rule 23(a)(1).

The common questions of fact are whether all the class members received the same form from the defendant. The common questions of law are whether the form violated the Truth-in-Lending law in that plaintiff alleges it failed to disclose a single item finance charge in violation of 12 C.F.R. § 226.8(c)(8)(i); failed to disclose a security interest in violation of 15 U.S.C. § 1638(a)(10) and 12 C.F.R. § 226.8(b)(5); and failed to disclose the amount or method of calculation of delinquency charges for late payments in violation of 15 U.S.C. § 1638(a)(9) and 12 C.F.R. § 226.8(b)(4). This meets the requirements of Rule 23(a)(2).

The named plaintiff's claims are typical since he alleges that all class members received the same form containing the same violations. This meets the requirements of Rule 23(a)(3).

The fourth requirement, Rule 23(a)(4), that the representative party fairly and adequately protect the interests of the class raises issues left unresolved by *Boggs, supra,* 511 F.2d at 118. The maximum recovery available in this case, if it is certified as a class action, is $100,000 since defendant's net worth is $5,241,106,000, one per cent of which is $52,411,060, easily exceed-

ing the $100,000 limit in § 1640(a)(2)(B).[3] Dividing 302 class members into $100,000 equals a maximum recovery of approximately $331 per class member. In a class action we would not be bound by the $100 minimum rule nor would we have to give class members twice the finance charge. § 1640(a)(2)(B).[4] Plaintiff's finance charge was $213.50, entitling him to a maximum recovery of $427.00 if this suit was pursued as an individual action. § 1640(a)(2)(A). The amount of his recovery is uncertain if this suit is a class action but it will be less than his recovery if he pursues this suit as an individual ($331 versus $427).[5] This creates serious doubts whether plaintiff would be an adequate class representative because we cannot understand why plaintiff wishes to pursue this as a class action. On this ground alone we refuse to certify this suit as a class action without some adequate explanation for plaintiff's altruism. *See Weathersby, Jr. v. Fireside Thrift Co.,* 4 CCH Consumer Credit Guide ¶ 98,640 (N.D. Cal.1975).

It is also possible that the net judgment in this case will be in favor of defendant since its counterclaim is for $716.10 while the maximum that plaintiff would recover is $331. We believe that this bars plaintiff from being an adequate class representative since he will have little incentive to vigorously pursue this suit. For this reason, we refuse to certify this case as a class action. Accordingly,

IT IS THE ORDER OF THE COURT that plaintiff's motion to certify this case as

**2.** Plaintiff made his purchase on October 8, 1974, and filed this action on October 8, 1975. Those people who made purchases from October 1, 1974, to October 7, 1974, are barred by the one year statute of limitations. 15 U.S.C. § 1640(e). *Wetzel v. Liberty Mutual Insurance Co.,* 508 F.2d 239, 246 (3rd Cir. 1975), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679.

**3.** This maximum has now been increased to $500,000 but it is not effective until March 23, 1977. Act of March 23, 1976, Pub.L.No.94–240, §§ 4(3) and 6, 90 Stat. 260.

**4.** We note that some class members may also wish to opt out since their recovery in an indi-

vidual suit may be higher than in a class action. This problem can be handled by an appropriate notice. Rule 23(c)(2). *Agostine, supra,* 69 F.R.D. at 448, n. 13.

**5.** Moreover, there is no guarantee that even the maximum recovery will be given since the award to each class member is within the Court's discretion. § 1640(a)(2)(B). Plaintiff is also unlikely to recover actual damages since these are seldom awarded in Truth-in-Lending cases. *Agostine, supra,* 69 F.R.D. at 444, n. 6 (and cases cited therein). In his complaint plaintiff has alleged actual damages but has never indicated what they were.

a class action, be, and the same is hereby, DENIED.

IT IS THE FURTHER ORDER OF THE COURT that plaintiff's motion to dismiss defendant's counterclaim, be, and the same is hereby, DENIED.